**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**
**AT HARRISBURG**

| | |
|---|---|
| STEPHANIE SILVIS, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>WEST SHORE HOME, LLC,<br><br>Defendant. | No. 1:26-cv-01168-KMN<br><br>Honorable District Judge Keli M. Neary |

**PLAINTIFF-COUNTERDEFENDANT STEPHANIE SILVIS'**
**MOTION TO DISMISS AND/OR STRIKE DEFENDANT'S COUNTERCLAIM**

## I. INTRODUCTION

West Shore Home has a reputation as a telemarketer that calls people who do not want to be called, violating their rights under the Telephone Consumer Protection Act. That includes people like Stephanie Silvis, who alleges West Shore violated the TCPA when it called her even though she listed her name and number on the "National Do Not Call Registry." And she is not alone. Ms. Silvis represents consumers across the country who suffered the same misconduct and have taken their complaints online, leaving West Shore 1-Star reviews criticizing it as a telemarketer that violates the law. For its part, West Shore admits it calls consumers "in error" and acknowledges how "frustrated" that makes them. In other words, West Shore developed a reputation as a telemarketer that harasses consumers and has no one to blame for that reputation but itself.

Yet West Shore's counterclaim now alleges the reputation it developed with its misconduct is somehow Ms. Silvis's fault. And West Shore does so even though it admits in its counterclaim what Ms. Silvis alleges in her complaint: "On September 15 and 16, 2025, West Shore Home

called Silvis twice"—never denying it did so when her name and number are on the DNC Registry. Instead, West Shore's counterclaim seizes on a misunderstanding that makes no difference.

After West Shore violated Ms. Silvis's TCPA rights in September 2025, she complained on Facebook about the calls West Shore admits it made, but misattributed some calls to West Shore that other telemarketers made. She said West Shore called her eight times when it only called her twice. It was a mistake anyone could make when telemarketers are bombarding their phone, and one West Shore admits she corrected when it asked her to. She deleted the post at its request.

Put another way, West Shore admits to calling Ms. Silvis but alleges she "harmed" its reputation by overstating the calls. But the problem is West Shore never specifies what that harm is or how a Facebook post could cause it. Instead, it alleges a conclusion without foundation, claiming it "suffered reputation harm as evidenced by the responses she received to the Facebook Post and discovery that West Shore Home could unearth." Doc. 10 (Counterclaim) ¶ 25. Yet what discovery West Shore "could unearth" and what responses Ms. Silvis "received" are a mystery because West Shore never details them. And without those details, West Shore's allegations are "conclusory allegations without facts supporting the damages element of [its] defamation claim." *Shen-Sampas v. Klein*, No. 25-1637, 2025 LX 35123, at *11 (E.D. Pa. Apr. 30, 2025). West Shore cannot rely on conclusions to establish harm. It must detail that harm or face dismissal.

That aside, West Shore is complaining about a controversy it created with its calling misconduct, raising West Shore's pleading burden. Under Pennsylvania law, companies that solicit consumers become "limited public figures" because their advertising invites "public attention, comment, and criticism." *Steaks Unlimited v. Deaner*, 623 F.2d 264, 274 (3d Cir. 1980). And West Shore not only invited criticism but controversy, as it has "received numerous contacts from area customers complaining" about its misconduct. *Am. Future Sys., Inc. v. Better Bus. Bureau*, 592 Pa. 66, 89, 923 A.2d 389, 403 (2007). On those facts, West Shore must plead Ms. Silvis not only

damaged its reputation (she did not), but that she did so with "actual malice"—an element West Shore does not plead. *Id*. at 73.

There are therefore three reasons to dismiss West Shore's counterclaim. ***First***, West Shore has not specified how Ms. Silvis harmed its "reputation" beyond "conclusory" allegations. ***Second***, West Shore is trying to claim its attorney fees as damages, and attorney fees are never considered damages. Thus, the Court should at minimum strike them from West Shore's pleading. And ***third***, West Shore failed to plead Ms. Silvis acted with "actual malice" when she complained about West Shore's misconduct.

## II. BACKGROUND

### A. West Shore violates the TCPA

West Shore's counterclaim characterizes West Shore as a prominent home remodeling company operating in "over 40 markets and 25 states." Counterclaim ¶ 9. Ms. Silvis agrees and alleges West Shore's prominence is due in part to its advertising. Indeed, West Shore's counterclaim admits it telemarkets consumers like Ms. Silvis to drum up business. *Id*. ¶ 10. But that conduct has created controversy because West Shore does not respect people's "do-not-call" designations when they list their numbers on the "National Do Not Call Registry." Doc. 1 (Compl.) ¶¶ 52-55. That includes Ms. Silvis, who listed her number on the Registry over 20 years ago, warning telemarketers like West Shore not to call. Matching West Shore's counterclaim allegations, Ms. Silvis alleges it called her twice in September 2025, violating the TCPA's provisions prohibiting calls to consumers on the DNC Registry. *Id.* ¶¶ 36–38, 41, 51-55.

West Shore violates those DNC designations en masse. Ms. Silvis's complaint shows consumers report receiving calls from West Shore "almost every day. Even if you say not to call again. They will keep calling. Since they are desperate for new jobs they will keep harassing." *Id*.

¶ 33. Other consumers note West Shore's "Negative Professionalism" when calling and that it calls "2-4 times a day" and "THEY STILL CALL DAILY" even after consumers complain. *Id*.

For its part, West Shore never denies its misconduct when it responds to complaints. It apologizes for calls made "in error" and says it understands when consumers are "frustrated with the calls[,]" though it will also complain about their complaints: "is it really worth a one star review[?]" *Id*. In other words, West Shore's telemarketing has a reputation, as shown in Ms. Silvis' complaint. Yet it claims Ms. Silvis somehow damaged that reputation when she complained about its misconduct—without showing how she did so in its counterclaim.

**B. West Shore's Counterclaim**

West Shore's counterclaim alleges Ms. Silvis harmed its reputation when she complained about its calls without explaining how. It refers to a Facebook post it does not provide to the Court, alleging the post claimed West Shore called Ms. Silvis "eight times in five minutes, calling her at 6:00 a.m., and calling her after she told West Shore to stop calling her." Counterclaim ¶ 20. West Shore does not know who saw the post or whether it was "published" only to her friends or to a "wider audience depending on her privacy selections at the time." *Id*. ¶ 21. For that reason, West Shore admits it lacks the information to determine the post's reach, saying it needs discovery on that contention. *Id*.

As harm, West Shore says only that it suffered "reputational harm" without describing what that harm is, claiming the harm is "evidenced by the responses [Ms. Silvis] received to the Facebook Post and discovery that West Shore Home could unearth." *Id*. ¶ 25. But whatever discovery West Shore unearthed remains a mystery to Ms. Silvis and the Court because West Shore does not attach the post, allege the "responses" Ms. Silvis received, or describe that discovery. *Id*. Instead, it hints that the information establishes "harm" and requires the reader to assume its truth.

As described below, West Shore cannot rely on assumptions to establish damages. It must plead them.

## III. LEGAL STANDARDS

A motion to dismiss "tests the legal sufficiency of the complaint." *Tufano v. Based Bodyworks LLC*, No. 3:26-CV-835, 2026 LX 474066, at *2 (M.D. Pa. Aug. 24, 2026). Under Rule 12(b)(6), the Court must dismiss a complaint that fails to state a claim for relief. As the Third Circuit has recognized, this standard has shifted from a "simple notice pleading to a more heightened form of pleading, requiring a plaintiff to plead more than the possibility of relief to survive a motion to dismiss." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 209-10 (3d Cir. 2009). In that analysis, the Court must accept "as true" all allegations in the complainant's complaint. *Jordan v. Fox, Rothschild, O'Brien & Frankel, Inc.*, 20 F.3d 1250, 1261 (3d Cir. 1994). But the Court need not credit "bald assertions or legal conclusions[.]" *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997). The Court also need not "assume that a . . . plaintiff can prove [*4] facts that the . . . plaintiff has not alleged." *Associated Gen. Contractors of Cal. v. California State Council of Carpenters*, 459 U.S. 519, 526 (1983).

Under Rule 12(f), a party may move to strike "an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). A matter in a pleading is "immaterial when it has no essential or important relationship to the claim for relief." *Snider for Goldhirsh v. State Farm Fire & Cas. Co.*, 644 F. Supp. 3d 141, 147 (E.D. Pa. 2022) (internal quotations omitted). It is considered "impertinent when it does not pertain to the issues raised in the complaint." *Id.* A court will grant a motion to strike "to clean up the pleadings, streamline litigation, and avoid unnecessary forays into immaterial matters." *McInerey v. Moyer Lumber & Hardware, Inc.*, 244 F. Supp. 2d 393, 402 (E.D. Pa. 2002).

## IV. ARGUMENT

### A. West Shore has not alleged "reputational damage"

The Court cannot assume West Shore suffered "reputational damage" when it has failed to explain what that damage is, especially when the record shows consumers have reason to complain about West Shore's telemarketing. Reputational damages cannot be assumed at the pleading stage, as the pleading must answer the question: "What happened because of these statements?" *Shen-Sampas*, 2025 LX 35123, at *12. Because it is not enough to make "only conclusory allegations without facts supporting the damages element of [the] defamation claim." *Id.*

Defamation claims have seven elements. *Scott v. Bailey*, No. 22-3654, 2023 LX 154041, at *4 (E.D. Pa. Aug. 31, 2023). The claimant must show: (i) the "defamatory character of the communication"; (ii) its publication by defendant; (iii) its application to plaintiff; (iv) the "understanding of the recipient of its defamatory meaning"; (v) the understanding that its meaning is applied to plaintiff; (vi) "special harm resulting to the plaintiff"; and (vii) "Abuse of a conditionally privileged occasion." *Id.* A statement defames someone if it "tends to harm the reputation of another so as to lower him in the estimation of the community or to deter third persons from associating with him." *Synygy, Inc. v. ZS Assocs., Inc.*, 110 F. Supp. 3d 602, 612 (E.D. Pa. 2015) (internal quotation marks and citation omitted). "Special damages" require that the claimant plead the defamation cost them money. *Franklin Prescriptions, Inc. v. N.Y. Times Co.*, 424 F.3d 336, 343 (3d Cir. 2005). If the claimant alleges "defamation per se" they need not allege "special damages" but must still allege "general damages." *Shen-Sampas*, 2025 LX 35123, at *12.

West Shore fails to meet this standard under two overlapping elements: failing to allege Ms. Silvis' statement was even "defamatory" and what harm it caused if it was "defamatory." As above, West Shore must plead what the fallout from the statement was and answer "[w]hat happened?" *Id.* But rather than plead what happened, West Shore wants the Court to assume it

"suffered reputation harm as evidenced by the responses she received to the Facebook Post and discovery that West Shore Home could unearth." Counterclaim ¶ 25. This is a conclusion hinting at evidence that may exist without alleging what that evidence is, rendering West Shore's allegations "conclusory." And under Pennsylvania precedent, that cannot satisfy the standard: "Plaintiff has alleged only in conclusory terms that his character and reputation were harmed… This is too vague to state a claim." *Scott*, 2023 LX 154041, at *5.

If West Shore has more facts to allege than it did, then it should allege more in its counterclaim and not leave the Court guessing. Hinting that Ms. Silvis' Facebook post received comments tells the Court nothing about what the comments said or how they harmed West Shore. And claiming discovery "could unearth" facts establishing damages does not tell the Court what West Shore "unearthed." Perhaps the commenters agreed with Ms. Silvis and shared their own experience with its telemarketing harassment, showing West Shore's reputation is what Ms. Silvis claims it to be. Indeed, that is what Google reviews about West Shore claim. Compl. ¶ 33. Or perhaps they said nothing relating to the post at all. In any event, the Court should not assume what the commenters said or that they show Ms. Silvis harmed West Shore's reputation. West Shore should plead more if it has more.

The absence of any alleged damages also shows why West Shore has not pleaded facts showing that Ms. Silvis's statements tended to "harm the reputation of another as to lower him in the estimation of the community or deter third persons from associating or dealing with him." *Tucker v. Fischbein*, 237 F.3d 275, 282 (3d Cir. 2001). As above, Ms. Silvis' class action complaint shows West Shore already has a reputation for telemarketing misconduct, as other consumers have complained and West Shore agreed it calls consumers "in error" and knows how that "frustrates" them. Compl. ¶ 33. This speaks to the "substantial truth" to Ms. Silvis's statements. *Dunlap v. Phila. Newspapers, Inc.*, 301 Pa. Super. 475, 448 A.2d 6, 15 (Pa. Super. Ct. 1982) (*citing* Robert

D. Sack, *Libel, Slander, and Related Problems* 50–51, 137-38 (1980) (observing "[t]he literal 'truth' of a publication need not be established, only that the statement is 'substantially true.' The proof of 'truth' must go to the 'gist' or 'sting' of the defamation. The test is 'whether the [alleged] libel as published would have a different effect on the mind of the reader from that which the pleaded truth would have produced'"). In other words, to show Ms. Silvis "worsened" West Shore's reputation as a telemarketer, West Shore must do more than allege Ms. Silvis's statements were "literally" not true, but less than "substantially true." *Id*.

The Court should therefore dismiss West Shore's counterclaim for failing to allege "reputational" harm. West Shore otherwise claims its attorney fees as damages, but that fails for another reason, as explained below.

**B. West Shore cannot recover its attorney fees as damages and the Court should strike them, at minimum**

As a rule, no jurisdiction in America allows litigants to claim attorney fees as damages. *Samuel-Bassett v. Kia Motors Am., Inc.*, 613 Pa. 371, 464, 34 A.3d 1, 57 (2011) ("There is nothing inherently unjust about limiting this form of compensation to **actual** costs") (emphasis in original). That is the American Rule: "Each litigant pays his own attorney's fees, win or lose, unless a statute or contract provides otherwise." *Hardt v. Reliance Standard Life Ins. Co.*, 560 U.S. 242, 252-53 (2010). And it applies in Pennsylvania. *Trizechahn Gateway Ltd. Liab. Co. v. Titus*, 601 Pa. 637, 652, 976 A.2d 474, 482 (2009) ("Under the American Rule, applicable in Pennsylvania, a litigant cannot recover counsel fees from an adverse party").

Yet West Shore tries to claim its "its payment of money to outside counsel to compel Silvis to remove the defamatory Facebook Post." Counterclaim ¶ 24. While exceptions exist to the American Rule, West Shore does not plead any that could apply here. It cannot claim a right to attorney fees under statute because it is not alleging a violation under statute, nor can it claim any

"bad-faith" pre-litigation conduct. *Baker Botts L.L.P. v. ASARCO LLC*, 576 U.S. 121, 134 (2015) (listing exceptions); *Bd. of Trs. v. Liberty Mut. Ins. Co.*, No. 15-2820, 2015 LX 13214, at *11 (E.D. Pa. July 14, 2015) (awards for attorney fees caused by "bad faith" are only awarded for litigation misconduct, not pre-litigation conduct).

In other words, West Shore pleads no right to attorney fees and therefore has none. And because West Shore cannot claim its attorney fees, the Court should dismiss its defamation claim because West Shore cannot allege "special harm." *Scott*, 2023 LX 154041, at *5 ("To satisfy the special harm requirement, Plaintiff must allege that he suffered a specific monetary or out-of-pocket loss as a result of the defamation") (quotations and citations omitted).

That aside, the Court should strike West Shore's claim for fees in any event. The court in *Fritz & Bianculli, LLC v. McCabe* faced the same issue and did just that. No. 24-cv-4741-JMY, 2025 LX 43869, at *11 (E.D. Pa. May 23, 2025). Just as here, defendant counterclaimed defamation it his answer and demanded his attorney fees as damages. *Id*. The court noted a "demand for damages that is not recoverable as a matter of law may be stricken pursuant to Rule 12(f)." *Id*. (*citing* and *quoting Rivera v. Dealer Funding, LLC*, 178 F. Supp. 3d 272, 281 (E.D. Pa. 2016)); *see also Kirschner v. State Farm Fire & Cas. Co.*, No. 23-993, 2023 U.S. Dist. LEXIS 194754, 2023 WL 7167568, at *2 (E.D. Pa. Oct. 31, 2023) ("Where a court can determine from the face of the complaint that a plaintiff cannot recover attorneys' fees, such a request may be stricken."). And like in *Fritz*, "Defendant [] requests attorney fees in his defamation claim outlined in [] his Counterclaims. However, 'there is no statute authorizing attorney's fees and costs to a party who prevails on a common law defamation claim.'" (*citing* and *quoting Elliot v. US Inspect Grp., Inc.*, No. 19-3319, 2020 LX 97207, 2020 WL 2933676, at *2 (E.D. Pa. June 3, 2020)). The same result should follow here.

For these reasons, the Court should dismiss West Shore's defamation claims for lacking "monetary" damages, and strike West Shore's demand for fees if it does not dismiss both counterclaims.

**C. West Shore is a "limited purpose public figure" and must plead "actual malice"**

Under Pennsylvania law, telemarketers transform themselves into "limited public figures" when they commit telemarketing misconduct. *Am. Future Sys.*, 592 Pa. 66, 87 (a defamation plaintiff can become a "public figure" through "a controversy . . . created by a plaintiff's own activities, particularly with respect to widespread public solicitation and advertisements"). Just consider the complaints alleged in this case showing that Ms. Silvis and others have taken to complaining online about West Shore's telemarketing. Compl. ¶ 33. That controversy stemmed not from consumers or Ms. Silvis, but from West Shore. And when West Shore opened the door to consumers' criticism, it raised the standard to allege defamation arising from that criticism, requiring it to plead "actual malice." *Brown v. Phila. Tribune Co.*, 447 Pa. Super. 52, 58, 668 A.2d 159, 162 (1995).

Pennsylvania law on "limited public figures" stems in part from a Pennsylvania Supreme Court case about telemarketing. In *Am. Future Sys.*, plaintiff was a nationwide business that telemarketed its business to consumers like West Shore, and the Better Business Bureau reported on that telemarketing because consumers had complained about its advertising practices. *Am. Future Sys.*, 592 Pa. at 70. Plaintiff sued alleging the reporting defamed plaintiff with "false and defamatory" statements about its advertising, claiming those statements had damaged plaintiff's reputation. *Id.* at 72. In evaluating the claim, the Pennsylvania Supreme Court found it was not enough for plaintiff to allege the Better Business Bureau published any "false" statements "negligently" because plaintiff's advertising activities transformed it into a "limited purpose public figure." *Id.* at 92 ("Appellant was a public figure for the limited purpose of commentary concerning

its business practices”). And the reasoning for that decision was that companies invite criticism when they advertise through means like telemarketing. *Id.* at 88–89 (*citing Steaks Unlimited v. Deaner*, 623 F.2d 264, 274 (3d Cir. 1980) “through its advertising blitz, Steaks invited public attention, comment, and criticism”). In addition, companies like plaintiff there and West Shore here “effectively have assumed the risk of potentially unfair criticism by entering into the public arena and engaging the public’s attention.” *Id.* (*citing* and *quoting Steaks Unlimited*, 623 F.2d at 273).

So too here. West Shore assumed the risk that consumers would criticize it when it telemarketed its services to them, something consumers did when they complained about its telemarketing online. Thus, West Shore cannot be surprised by Ms. Silvis’s commentary considering it *admits* it called her. For that reason, West Shore must allege that Ms. Silvis’s Facebook Post was not only defamatory (it was not), but that Ms. Silvis made it with “actual malice.” Because West Shore fails to do so, its defamation claims should be dismissed.

## V. CONCLUSION

For the reasons above, the Court should dismiss West Shore’s counterclaim or strike its claim for attorney fees as damages, at minimum.

RESPECTFULLY SUBMITTED this 10th day of September, 2026.

*<u>/s/ Carly M. Roman</u>*
Carly M. Roman (*pro hac vice*)
**STRAUSS BORRELLI PLLC**
980 N. Michigan Avenue, Suite 1610
Chicago, Illinois 60611
T: (872) 263-1100
F: (872) 263-1109
croman@straussborrelli.com

*Counsel for Plaintiff and the Putative Class*

**CERTIFICATE OF CONCURRENCE**

PURSUANT TO M.D. Pa. Local Rule 7.01, counsel for Plaintiff/Counter-Defendant sought concurrence in the relief requested from counsel for Defendant/Counter-Plaintiff, but concurrence was denied.

RESPECTFULLY SUBMITTED this 10th day of September, 2026.

*/s/ Carly M. Roman*
Carly M. Roman (*pro hac vice*)
**STRAUSS BORRELLI PLLC**
980 N. Michigan Avenue, Suite 1610
Chicago, Illinois 60611
T: (872) 263-1100
F: (872) 263-1109
croman@straussborrelli.com

*Counsel for Plaintiff and the Putative Class*

**CERTIFICATE OF SERVICE**

I, Carly M. Roman, hereby certify that on September 10, 2026, I caused the foregoing to be electronically filed with the Court using the Court's CM/ECF system which will send an electronic copy to all parties and/or their counsel of record.

DATED this 10th day of September, 2026.

Respectfully submitted,

*/s/ Carly M. Roman*

Carly M. Roman (*pro hac vice*)
**STRAUSS BORRELLI PLLC**
980 N. Michigan Avenue, Suite 1610
Chicago, Illinois 60611
T: (872) 263-1100
F: (872) 263-1109
croman@straussborrelli.com

*Counsel for Plaintiff and the Putative Class*